## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MOSAIC SUSTAINABLE FINANCE CORPORATION, *et al.*,[1] | ) | Case No. 25-90156 (CML) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |
| MOSAIC SUSTAINABLE FINANCE CORPORATION, *et al.*, | ) | Adv. Pro. No. 25-03599 |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000, | ) | |
|  | ) |  |
| Defendants. | ) |  |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) DECLARING THAT THE AUTOMATIC STAY APPLIES TO CERTAIN ACTIONS AGAINST NON-DEBTORS OR (II) PRELIMINARILY ENJOINING SUCH ACTIONS

---

[1] The Debtors in the chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are as follows: Mosaic Sustainable Finance Corporation (6802); Solar Mosaic LLC (3655); Modern Home LLC (4998); Mosaic Funding Holdings LLC (0866); and SMCTX LLC (6303). The service address for each of the above Debtors is 601 12th Street, Suite 325, Oakland, California 94607.

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................. **6**

**FACTUAL BACKGROUND** ...................................................................... **8**

  I.   LITIGATION AGAINST THE DEBTORS AND THE PROTECTED PARTIES ........... 8

    *A.*   *The Debtors' Business* ......................................................... 9

    *B.*   *The Indemnification Obligations & The Pending Actions* ............................ 11

    *C.*   *Continued Pursuit of the Indemnification Claims Will Jeopardize the Debtors' Ability to Reorganize Successfully* ................................................. 13

**ARGUMENT** ......................................................................... **16**

  I.   THE COURT HAS SUBJECT MATTER JURISDICTION ........................................... 17

    *A.*   *This Court Has "Arising Under" Jurisdiction to Extend the Automatic Stay* .............. 17

    *B.*   *This Court Has "Arising In" Jurisdiction to Grant Relief that Would Have No Existence Outside of Bankruptcy* .............................................. 18

    *C.*   *This Court has "Related to" Jurisdiction to Enjoin the Prosecution of the Indemnification Claims Against the Protected Parties* ................................. 18

  II.   THE AUTOMATIC STAY APPLIES OR EXTENDS TO PROHIBIT PROSECUTION OF THE INDEMNIFICATION CLAIMS AGAINST THE PROTECTED PARTIES ........... 20

    *A.*   *The Covered Actions Are Automatically Stayed* ......................................... 20

    *B.*   *Unusual Circumstances Exist to Extend the Stay to Non-Debtors* .............................. 21

  III.   THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER SECTION 105(A) OF THE BANKRUPTCY CODE TO ENJOIN THE CONTINUATION OR COMMENCEMENT OF INDEMNIFICATION CLAIMS AGAINST PROTECTED PARTIES ........................... 29

    *A.*   *The Preliminary Injunction Factors All Support Enjoining the Pursuit of Debtor Indemnification Claims Against the Protected Parties* ........................................ 30

**CONCLUSION** ........................................................................ **33**

**NOTICE** ............................................................................... **33**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ........................................................................... *passim*

*Am. Film Techs. v. Taritero (In re Am. Film Techs.)*,
175 B.R. 847 (Bankr. D. Del. 1994) .................................................................26, 30

*Am. Honda Fin. Corp. v. Salyer*,
No. 3:03-cv- 651, 2007 WL 1158114 (S.D. Miss. Apr. 18, 2007) .........................23

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. 2001) ...................................................................19, 22, 23

*Bestwall LLC v. Those Parties Listed on Appendix A (In re Bestwall LLC)*,
606 B.R. 253 (Bankr. W.D.N.C. 2019)..............................................................26, 28

*Blundell v. Home Quality Care Home Health Care, Inc.*,
No. 3:17-cv-1990, 2017 WL 5889715 (N.D. Tex. Nov. 29, 2017) .........................24

*In re Brier Creek Corp. Ctr. Assocs. Ltd.*,
486 B.R. 681 (Bankr. E.D.N.C. 2013)..............................................................17, 18

*Chase Manhattan Bank (N.A.) v. Third Eighty-Ninth Assocs. (In re Third Eighty-Ninth Assocs.)*,
138 B.R. 144 (S.D.N.Y. 1992)..............................................................................20

*In re Divine Ripe, L.L.C.*,
538 B.R. 300 (Bankr. S.D. Tex. 2015) ...................................................................18

*E. Air Lines v. Rolleston (In re Ionosphere Clubs, Inc.)*,
111 B.R. 423 (Bankr. S.D.N.Y. 1990)....................................................................32

*In re Family Health Servs., Inc.*,
105 B.R. 937 (Bankr. C.D. Cal. 1989)....................................................................30

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
980 F.2d 125 (2d Cir. 1992)....................................................................................21

*Fed. Life Ins. Co. (Mut.) v. First Fin. Grp. of Texas, Inc.*,
3 B.R. 375 (S.D. Tex. 1980) ...................................................................................24

*Feld v. Zale Corp. (In re Zale Corp.)*,
62 F.3d 746 (5th Cir. 1995) ...........................................................................21, 27

*Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*,
    710 F.3d 299 (5th Cir. 2013) ...........................................................................19

*FPSDA II, LLC v. Larin (In re FPSDA I, LLC)*,
    No. 10-75439, 2012 WL 6681794 (Bankr. E.D.N.Y. Dec. 21, 2012) ..............17, 18

*FTC v. Garvey*,
    383 F.3d 891 (9th Cir. 2004) ...........................................................................25

*In re Fuel Oil Supply and Terminaling, Inc.*,
    30 B.R. 360 (Bankr. N.D. Tex. 1983).................................................................17

*Gisinger v. Patriach*,
    No. 16 CIV. 1564 (ER), 2016 WL 6083981 (S.D.N.Y. Oct. 18, 2016) .................19

*Halo Wireless, Inc. v. Alenco Communs., Inc. (In re Halo Wireless, Inc.)*,
    684 F.3d 581 (5th Cir. 2012) ...........................................................................20

*In re Johns-Manville Corp.*,
    40 B.R. 219 (Bankr. S.D.N.Y. 1983), *aff'd* 40 B.R. 219 (S.D.N.Y. 1984), *and*
    *appeal allowed*, *decision vacated in part on other grounds*, 41 B.R. 926
    (S.D.N.Y. 1984) ...............................................................................................27

*Lomas Fin. Corp. v. The N. Tr. Co. (In re Lomas Fin. Corp.)*,
    117 B.R. 64 (S.D.N.Y. 1990)............................................................................23

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
    474 U.S. 494 (1986).........................................................................................20

*Nat'l Oilwell Varco, L.P. v. Mud King Prods.*,
    No. 4:12-3120, 2013 WL 1948766 (S.D. Tex. May 9, 2013)................................23

*In re Phila. Newspapers, LLC*,
    407 B.R. 606 (E.D. Pa. 2009) .....................................................................19, 29

*Reliant Energy Servs., Inc. v. Enron Canada Corp.*,
    349 F.3d 816 (5th Cir. 2003) ......................................................................20, 22

*S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*,
    817 F.2d 1142 (5th Cir. 1987) ...............................................................20, 21, 30

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ......................................................................25, 26

*Texas v. United States Dep't of Homeland Sec.*,
    123 F.4th 186 (5th Cir. 2024) ..........................................................................31

*TK Holdings Inc. v. Hawai'i (In re TK Holdings Inc.)*,
    Adv. Case No. 17-50880 (Bankr. D. Del.) [Docket No. 64] ...................................................28

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*,
    386 B.R. 17 (Bankr. D. Del. 2008) ........................................................................................28

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*,
    No. 01-01139, 2004 WL 954772 (Bankr. D. Del. Apr. 29, 2004) ..........................................23

*Matter of Wood*,
    825 F.2d 90 (5th Cir. 1987) ...........................................................................................17, 18

**Statutes**

28 U.S.C. § 1334(b) ................................................................................................................17, 18

11 U.S.C. § 105 ......................................................................................................................... *passim*

11 U.S.C. § 362 ......................................................................................................................... *passim*

11 U.S.C. § 363 ......................................................................................................................8, 16, 31

11 U.S.C. § 1102 ...............................................................................................................................9

11 U.S.C. § 1107(a) ..........................................................................................................................8

11 U.S.C. § 1108 ...............................................................................................................................8

Plaintiffs Mosaic Sustainable Finance Corporation, Solar Mosaic LLC, Modern Home LLC, Mosaic Funding Holdings LLC, and SMCTX LLC (the "Debtors" or the "Company") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Stay Order"), (i) declaring that the filing or continued prosecution of the Indemnification Claims (as defined below) against any of the Protected Parties (as defined below) while the Chapter 11 Cases remain pending violates the automatic stay, and (ii) preliminarily enjoining the filing or continued prosecution of Indemnification Claims (on any theory of liability) against any of the Protected Parties while the Debtors' Chapter 11 Cases remain pending.[2]   In further support of this Motion, the Debtors respectfully state as follows:[3]

## PRELIMINARY STATEMENT

1.      On July 22, 2025, the Debtors commenced the instant adversary proceeding for the purposes of obtaining an order from this Court extending the automatic stay to certain non-debtor entities—Connexus Credit Union ("Connexus") and Concord Servicing Corp. ("Concord" and, together, the "Protected Parties").   The Protected Parties are subject to current and threatened litigation, as to which the Debtors owe such parties contractual indemnification obligations regarding the cost of defense and potential recovery, all on the terms set forth in their respective pre-petition agreements.

2.      Specifically, through this adversary proceeding, the Debtors seek a declaration that the automatic stay pursuant to section 362(a) of the Bankruptcy Code applies or extends to prohibit

---

[2]      Contemporaneously herewith in further support of this Motion, the Debtors have filed (a) the *Debtors' Complaint for Declaratory and Injunctive Relief (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors, and (II) Preliminarily Enjoining Such Actions* (the "Complaint") that initiated this adversary proceeding, and (b) the *Declaration of Mark A. Renzi in Support of Debtors' Motion For Entry of an Order (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions* (the "Renzi Declaration").

[3]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Complaint.

(i) the continued prosecution of the actions identified in Appendix A to the Complaint (collectively, the "Pending Actions"), (ii) the filing of any additional actions (collectively with the Pending Actions, the "Covered Actions") asserting Indemnification Claims against certain non-debtor parties identified in Appendix B to the Complaint (collectively, the "Protected Parties") while the Chapter 11 Cases remain pending, and (iii) the expansion of any Pending Action to name as a party any Protected Party not named as of the Petition Date (as defined below).

3.      The Protected Parties are presently named as defendants in as many as 23 lawsuits, both in court and in arbitration, and the plaintiffs in certain of those lawsuits have demanded that their matters continue notwithstanding the pendency of the Chapter 11 Cases.  The claims asserted against both the Debtors and Protected Parties in these proceedings generally involve the same facts and legal theories, and in all cases have implicated the Debtors' indemnification obligations to the Protected Parties.   Having accepted tender of the Protected Parties' request for indemnification in these actions pursuant to the terms of their respective Covered Agreements, the Debtors have assumed the defense of the Protected Parties in all subject actions, and are obligated to cover the cost of litigating such claims, as well as the cost of any hypothetical award ordered at the conclusion of such matters.[4]

4.      Given the pendency of such actions, the speed with which each may be adjudicated in arbitration, as well as the factual overlap between claims asserted against the Protected Party and those asserted against the Debtors in the same or related proceedings, the Pending Actions, if permitted to continue, would result in (i) liquidation of claims against the Debtors outside the Chapter 11 Cases, (ii) potential preclusive or prejudicial impact on the Debtors in subsequent

---

[4]      The Debtors accepted tender of the Protected Parties' indemnification request on the basis of facts known as of that time, and reserve rights with regard to their indemnification obligations should such facts or the Debtors' understanding thereof change going forward.

actions, and (iii) most importantly, depletion of the Debtors' resources arising out of their defense of such matters to the detriment of their estates.

5.     Continued pursuit of the Pending Actions thus threatens the Debtors' ability to successfully reorganize in the Chapter 11 Cases.  In the absence of an order enjoining these proceedings, the Debtors and their stakeholders will be harmed by the erosion of estate value through direct and indirect litigation costs related to the Indemnification Claims, impairing the Debtors' ability to consummate a value-maximizing transaction, either through a confirmed chapter 11 plan or sale transaction pursuant to section 363 of the Bankruptcy Code, and ultimately negating the Debtors' entire purpose for filing for bankruptcy protection.

6.     For these reasons, as well as those that follow, the Motion should be granted, and an order should be issued extending the automatic stay under sections 105(a) and/or 362(a) of the Bankruptcy Code to prohibit the commencement or continuation of any action by the Defendants against the Protected Parties asserting Indemnification Claims.

**FACTUAL BACKGROUND**[5]

**I.     LITIGATION AGAINST THE DEBTORS AND THE PROTECTED PARTIES**

7.     On June 6, 2025 (the "Petition Date"), the Debtors filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").  The Debtors continue to operate their businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this matter.  On June 19, 2025, the United States Trustee for the Southern District of Texas appointed

---

[5]     Unless otherwise specified, all statements of fact set forth herein are drawn from and supported by the Renzi Declaration.

an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. *See Notice of Appointment of Committee of Unsecured Creditors* [Ch. 11 Docket No. 127].

   A. <u>The Debtors' Business</u>

8. The Debtors operate their business under the name "Mosaic," which is one of the oldest financing companies in the residential solar space.  Mosaic was founded in 2010 as a clean energy crowdfunding initiative offering loans for the development of commercial solar projects. Initial projects included twelve private investor funded rooftop solar plants in California, New Jersey, and Arizona.  By 2012, the Debtors were financing solar plants at zero percent interest to create energy for local community organizations, which provided benefits to those communities in the form of reduced utility costs and job opportunities for local workers.

9. The business grew significantly thereafter.  By 2013, the Company expanded to offering an online platform for investors in their solar projects to earn a set annual return percentage with expectations of a full return on investment over a nine-year period.  Such initial projects were exceedingly popular, selling out in under 24 hours.  Then, in 2014, the Company's business model shifted to focusing on helping homeowners access residential solar projects through the Company's financing counterparties.

10. With this shift, the Company continued to grow in the solar project financing industry, becoming the first to combine solar loans with a fully digital financing platform.  In recent years, the Company has also grown its network of installers ("<u>Installers</u>") which make the Company's loans available to customers and perform the installation of solar systems (or other applicable home improvement products) pursuant to separate home improvement agreements with the customers.  The Company's national Installer network now consists of approximately 2,000 active contractors.

11.     Presently, the Debtors' business can be divided into two primary segments: (i) origination of new loans (the "Origination Business") and (ii) servicing of existing loans (the "Servicing Business").   Through its Origination Business, the Company originates loans for residential solar panel systems, which are made available to homeowners through the Company's network of Installers.   Loans originated through Mosaic's platform are typically funded through and sold into one of a number of different structures established in conjunction with financing partners, including (i) certain special purpose entity "warehouses," which are non-debtor subsidiaries of Debtor Mosaic Funding Holdings LLC, (ii) whole loan purchasers, and (iii) asset-backed securitizations vehicles.[6]

12.     The Servicing Business, by contrast, is built around Mosaic's servicing of loans sold to Mosaic's partners, as well as of loans funded directly by Connexus, among other direct origination parties.   Mosaic's agreement with Connexus grants the Debtors authority to (i) service, administer and exercise rights and remedies on behalf of Connexus (the "Connexus Servicing Agreement"), and (ii) market, accept applications for, administer, process, underwrite, disburse, close, and maintain the documentation related to solar energy system loans in connection with the Connexus's origination and funding of such loans (the "Connexus Loan Program Agreement").

13.     In connection with its Servicing Business, Mosaic also works with Concord as a subservicer, whereby Concord is retained by the Debtors to provide transaction services, customer service, collection services and other loan services, as well as services in connection with collecting payments for certain loans that are designated for third party treatment.   In memorializing that relationship, the parties entered into a servicing and collection agreement setting forth the terms and conditions that govern the obligations owed by the Debtors to Concord,

---

[6]     The Company is not currently originating new loans during the pendency of the Chapter 11 Cases.

and vice versa, in connection with Concord's subservicing of existing loans (the "Concord Subservicing Agreement" and, together with the Connexus Servicing Agreement and Connexus Loan Program Agreement, the "Covered Agreements").

B. The Indemnification Obligations & The Pending Actions

14.     In addition to setting forth the terms and conditions governing services to be provided by the Debtors to the Protected Parties, and vice versa, the Covered Agreements also set forth the Debtors' agreement to indemnify, hold harmless, and/or defend the Protected Parties for any liability arising from the Covered Agreements, and for third party claims arising under the Covered Agreement, as set forth more fully in the applicable Covered Agreement.  (*See* Renzi Declaration, Ex. 2 at § 7.1(b) (Concord Subservicing Agreement); Ex. 3 at § 10.1(a), (d) (Connexus Loan Program Agreement); Ex. 4 at § 7(a) (Connexus Servicing Agreement).)

15.     Specifically, under the Connexus Loan Program Agreement, the Debtors agreed to indemnify, defend, and hold harmless Connexus and its respective directors, officers, employees, agents and affiliates, and permitted assigns from and against any and all losses arising out of, among other things, any claim that a loan document, program materials, advertising materials, or any other aspect of the loan program violate any applicable law except to the extent such loan document, program material, advertising material or other item which gave rise to the claim was previously disclosed to and approved by Connexus (such obligation, the "Connexus Loan Program Indemnification").  (*See id.*, Ex. 3 at § 10.1(a), (d) (Connexus Loan Program Agreement).).

16.     Under the Concord Subservicing Agreement, the Debtors agreed to indemnify and hold Concord harmless from and against any and all claims, losses, demands, liabilities, or expenses (including, without limitation, reasonable attorneys' fees) related to or arising out of any claim by a third party related to borrower contact activity resulting from a material breach by the Debtors of their duties under the Subservicing Agreement or the Debtors' failure to follow rules

and regulations, including any applicable debt collection licensing requirements (such obligation, the "Concord Subservicing Indemnification" and, together with the Connexus Loan Program Indemnification, the "Indemnification Claims"). (*See id.*, Ex. 2 at § 7.1(b) (Concord Subservicing Agreement).)

17. Upon receipt of a written notice by a Protected Party of an indemnifiable claim being asserted against such Protected Party, the Debtors were authorized to assume the defense of the Protected Party through counsel of their own choosing and at their own expense. (*See id.*, Ex. 1 at § 7.2 (Concord Subservicing Agreement); Ex. 3 at § 10.1(f) (Connexus Loan Program Agreement); Ex. 4 at § 7(c) (Connexus Servicing Agreement).)

18. Prior to the Petition Date, both the Debtors and the Protected Parties were named as defendants in a number of lawsuits involving alleged Indemnification Claims brought by certain consumer-borrowers. While the allegations in each of the Pending Actions vary on a case-by-case basis, plaintiffs in such matters generally have alleged either that (i) the named defendants breached their contractual obligations by failing to properly install or service the solar panels;[7] (ii) the named defendants violated federal or state consumer protection statutes, including in connection with, among other things, alleged borrowing terms or efforts to collect on outstanding consumer loans; and/or (iii) plaintiffs were fraudulently induced into purchasing the solar panels and incurring related loan obligations by reason of alleged misrepresentations made by the Installers.

19. While the Debtors continue to dispute all claims presently asserted in the Pending Actions, the Debtors have agreed to assume the defense and indemnity of the Protected Parties, including by appointing counsel for, and defending, the Protected Parties in such actions. In those

---

[7] In many of the Pending Actions, plaintiffs claim that the Debtors and Protected Parties are indirectly liable for the alleged misconduct of the Installers.

Pending Actions where one or more of the Debtors also was named as a defendant, the Debtors retained counsel to represent the interests of both the indemnified Protected Party and the applicable Debtor.

20.     In all such matters, and subject to the terms of the applicable Covered Agreement, the Debtors are responsible for payment of covered losses to the Protected Parties, including costs and attorney's fees associated with the defense of the litigation, as well as costs associated with the ultimate outcome in any such Pending Action, should either the Debtors or the Protected Parties be found liable on the basis of the claims there asserted.

21.     Following the commencement of the Chapter 11 Cases, counsel to the Debtors contacted the legal representatives in the Pending Actions and informed them that the actions should be stayed pursuant to section 362 of the Bankruptcy Code.  Certain of the Defendants, through their counsel, have taken the position that the automatic stay does not apply to the non-debtor Protected Parties, and certain others have sought relief from the automatic stay in order to pursue their claims against the Protected Parties on a standalone basis.

C.     Continued Pursuit of the Indemnification Claims Will Jeopardize the Debtors' Ability to Reorganize Successfully

22.     The Debtors entered the Chapter 11 Cases with (i) a fully committed debtor in possession facility (the "DIP Facility") that would allow the Debtors to operate their businesses while pursuing a value-maximizing transaction in the Chapter 11 Cases, and (ii) an agreement by certain of the Company's prepetition lenders to sponsor a chapter 11 plan of reorganization that would recapitalize the Debtors' existing servicing business pursuant to a plan term sheet attached to the *Declaration of Mark A. Renzi, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Ch. 11 Docket No. 5].

23.     On July 3, 2025, the Debtors filed the *Joint Chapter 11 Plan of Mosaic Sustainable Finance Corporation and its Affiliated Debtors* [Ch. 11 Docket No. 219] (the "Plan") and the *Disclosure Statement for the Joint Chapter 11 Plan of Mosaic Sustainable Finance Corporation and its Affiliated Debtors* [Ch. 11 Docket No. 220] (the "Disclosure Statement").[8] A hearing to approve the Debtors' Disclosure Statement is currently scheduled for July 31, 2025.

24.     In addition, on the Petition Date, the Debtors filed a motion seeking approval of bid procedures (the "Bid Procedures") to market the Servicing Business and the Debtors' other assets while concurrently pursuing confirmation of the Plan.[9] On July 2, 2025, the Court entered an order approving the Bid Procedures [Ch. 11 Docket No. 212] (the "Bid Procedures Order"). The Debtors are currently marketing their assets pursuant to the Bid Procedures, with the deadline for qualified bids set for July 28, 2025.

25.     This dual track process will ensure that the Debtors are able to successfully reorganize in a manner that will maximize value for the benefit of the Debtors' creditor body. Both the Servicing Business and the Debtors' other assets are subject to an open and competitive bidding process designed to obtain the highest value for each of the Debtors' assets.

26.     The Pending Actions threaten the success of this process, which is otherwise strong. If the Pending Actions were permitted to proceed and new Covered Actions were permitted to be filed during the pendency of the Chapter 11 Cases, the Debtors and the estates would suffer irreparable harm in that such actions would result in (i) liquidation of claims outside the Chapter

---

[8]     That same day, the Debtors also filed the *Debtors' Emergency Motion for Entry of an Order (A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation Procedures and Solicitation Packages, (C) Scheduling a Combined Hearing, (D) Establishing Procedures for Objecting to the Plan and Final Approval of The Disclosure Statement, (E) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing, and (F) Granting Related Relief* [Ch. 11 Docket No. 221].

[9]     In the event that the Bid Procedures result in a higher and better offer for the Servicing Business, either through a sale transaction or plan transaction, the Debtors will seek consummation of the transaction in accordance with the Bid Procedures.

11 Cases, (ii) potential preclusive or prejudicial impact on the Debtors in subsequent litigation, and (iii) the depletion of the Debtors' resources to the detriment of their estates and the ability of the Debtors to successfully reorganize.

27.     Indeed, as an initial matter, litigating, settling, or attempting to establish the value of the Indemnification Claims against the Protected Parties outside the Chapter 11 Cases would liquidate claims against the Debtors, including by triggering existing indemnification and similar obligations of the Debtors to such entities.  In many of the Pending Actions, claims are to be adjudicated in connection with an arbitration proceeding, the speed of which increases the likelihood that final determinations on the merits may be reached during the pendency of the Chapter 11 Cases.

28.     Furthermore, the Protected Parties are not, to the best of the Debtors' understanding, subject to liability in the Pending Actions that is distinct from, or independent of, the claims giving rise to the Indemnification Claims.  As such, no severable portion of the Pending Actions could proceed as against the Protected Parties without giving rise to further potential covered losses under the Covered Agreements.

29.     For the same reasons, and given the factual overlap in many cases between claims asserted against the Protected Parties and claims asserted against the Debtors, such litigation creates risks of binding the Debtors through *res judicata* and collateral estoppel, and creating an evidentiary record that prejudices the Debtors.  To avoid this risk, the Debtors would be compelled to actively participate in each of the Covered Actions to ensure that the Debtors' interests are adequately protected, which would undermine the automatic stay and consume the Debtors' time and resources.

30.     Finally, continued defense of the Covered Actions and payment of any covered losses (including legal fees) will necessarily require the Debtors to expend assets that are property of the Debtors' estates and divest this Court of jurisdiction over the same.  Such assets are to be distributed to the Debtors' stakeholders in accordance with a confirmed chapter 11 plan of reorganization, or through a sale of substantially all or any portion of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

31.     Allowing the Covered Actions to proceed would necessarily diminish and possibly deplete those assets of the Debtors' estates, preventing the Debtors from successfully reorganizing and thereby frustrating the purpose of the Chapter 11 Cases more broadly.  Simply removing the Debtors as a named defendant in the Covered Actions would not prevent harm to the Debtors or the Protected Parties because, as described above, the Debtors are obligated to pay for the covered losses whether or not they are named as a defendant in an action arising under the Servicing Business or the Covered Agreements.

## **ARGUMENT**

32.     To guard against the severe and irreparable harm that the Debtors would suffer in the event that the Defendants are permitted to continue or commence Indemnification Claims against the Protected Parties (on any theory of liability) during the Debtors' Chapter 11 Cases, the Debtors seek entry of the Stay Order, (i) declaring that the filing or continued prosecution of the Indemnification Claims against any of the Protected Parties while the Chapter 11 Cases remain pending violates the automatic stay, and (ii) preliminarily enjoining the filing or continued prosecution of Indemnification Claims (on any theory of liability) against any of the Protected Parties while the Debtors' Chapter 11 Cases remain pending.

## I.   THE COURT HAS SUBJECT MATTER JURISDICTION

33.     As a threshold matter, this Court has subject matter jurisdiction over the instant action pursuant to section 1334(b) of title 28 of the United States Code, which identifies three types of proceedings over which this Court has jurisdiction—those (a) "arising under title 11," (b) "arising in" a case under title 11 and (c) "related to" a case under title 11.  28 U.S.C. § 1334(b). For the reasons set forth below, all such categories of proceeding are implicated here, and this Court therefore has jurisdiction pursuant to each of the three bases for jurisdiction identified in section 1334(b).

### A.   This Court Has "Arising Under" Jurisdiction to Extend the Automatic Stay

34.     "Arising under" jurisdiction "describe[s] those proceedings that involve a cause of action created or determined by a statutory provision of title 11."  *Matter of Wood*, 825 F.2d 90, 96 (5th Cir. 1987); *see also In re Fuel Oil Supply and Terminaling, Inc.*, 30 B.R. 360, 362 (Bankr. N.D. Tex. 1983) ("As to the 'arising under' jurisdiction nothing needs to be said other than its claims arise under §§ 362, 548 and 549 of the Bankruptcy Code.").[10]  This Court has "arising under" jurisdiction to determine that section 362(a) of the Bankruptcy Code prohibits, or should be extended to prohibit, the prosecution of Indemnification Claims against the Protected Parties.

35.     The Court also has "arising under" jurisdiction because the Debtors' request for a section 105(a) injunction is necessary to ensure and preserve the integrity of the automatic stay of section 362 of the Bankruptcy Code.  Given the close link between the injunction sought and the automatic stay, "common sense indicates that, if the Court has subject matter jurisdiction over a

---

[10]     *See also In re Brier Creek Corp. Ctr. Assocs. Ltd.*, 486 B.R. 681, 685 (Bankr. E.D.N.C. 2013) (holding that a determination as to whether section 362(a) applied to stay a proceeding against non-debtors "falls squarely within the court's 'arising under' jurisdiction."); *FPSDA II, LLC v. Larin (In re FPSDA I, LLC)*, No. 10-75439, 2012 WL 6681794, at *5 (Bankr. E.D.N.Y. Dec. 21, 2012) ("[S]ince the Bankruptcy Code both imposes the automatic stay and provides the Debtors and the Court with the means to invoke it and to implement its protections, it is manifest that any proceeding to determine the scope and applicability of the automatic stay 'arises under' the Bankruptcy Code").

proceeding to determine the applicability of the automatic stay," as it plainly does, "then it has jurisdiction over a related motion for preliminary injunctive relief," in the same proceeding. *FPSDA I*, 2012 WL 6681794, at *5 (finding "arising under" and "related to" jurisdiction).

B. <u>This Court Has "Arising In" Jurisdiction to Grant Relief that Would Have No Existence Outside of Bankruptcy</u>

36.     This Court separately has "arising in" jurisdiction because the Debtors' request for an extension of the automatic stay of section 362(a) and injunctive relief under section 105(a) is unique to bankruptcy.  A proceeding "arising in" a bankruptcy case is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood*, 825 F.2d at 97; *see also In re Divine Ripe, L.L.C.*, 538 B.R. 300, 306 (Bankr. S.D. Tex. 2015) (finding matters from motion for extension of automatic stay are matters "that can only arise in bankruptcy").

37.     Here, that standard is met because the Debtors' instant request for a stay and injunction—tied to and lasting only during the Chapter 11 Cases—arises only in bankruptcy.  As set forth herein, the Debtors require a section 105(a) injunction for the purposes of ensuring and preserving the integrity of the automatic stay, and the issuance of such an injunction "arises in" the Debtors' chapter 11 proceedings because section 105 of the Bankruptcy Code has no existence outside of bankruptcy. *Brier Creek*, 486 B.R. at 685 (bankruptcy court had "arising in" jurisdiction over debtors' request for order granting injunction pursuant to section 105).

C. <u>This Court has "Related to" Jurisdiction to Enjoin the Prosecution of the Indemnification Claims Against the Protected Parties</u>

38.     Finally, at a minimum, this Court has "related to" jurisdiction to extend the automatic stay under section 362(a) of the Bankruptcy Code and issue a related preliminary injunction under section 105(a) of the Bankruptcy Code.  A matter is "related to" a bankruptcy case—thereby giving the bankruptcy court "related to jurisdiction" under 28 U.S.C. § 1334(b)—

if the outcome could "conceivably have any effect on the estate" that "*in any way* impacts upon the handling and administration of the bankrupt estate." *Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013) (emphasis in original). "Certainty, or even likelihood" of an effect on the debtor's estate "is not a requirement" to determine whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001).

39.     Here, as further detailed below, pursuit of the Indemnification Claims against the Protected Parties unquestionably would have a direct effect on the Debtors' estates and ability to reorganize, and this Court thus has, at a minimum, "related to" jurisdiction over the Debtors' request to enjoin the further pursuit of such Indemnification Claims. *See In re Phila. Newspapers, LLC*, 407 B.R. 606, 615 (E.D. Pa. 2009) (finding "related to" jurisdiction due to the impact of litigation on debtors' reorganization efforts and debtors' practice of indemnifying its employees).

40.     "Related to" jurisdiction also exists over the Indemnification Claims against the Protected Parties because they share an identity of interest with the Debtors such that Indemnification Claims against the Protected Parties are, in effect, claims against the Debtors' estates, and because the Indemnification Claims raise factual and legal questions that are substantially related to, and inextricably intertwined with, those raised by the causes of action against the Debtors, such that the Debtors would risk substantial prejudice if the Indemnification Claims against the Protected Parties were permitted to go forward without the Debtors. *See, e.g.*, *Phila. Newspapers*, 407 B.R. at 615 (exercising jurisdiction over claims and finding identity of interests in part because of the debtors' indemnification obligations); *see also Gisinger v. Patriach*, No. 16 CIV. 1564 (ER), 2016 WL 6083981, at *3 (S.D.N.Y. Oct. 18, 2016) (finding jurisdiction existed over actions that were "inextricably intertwined" by virtue of identical facts and

assertions); *cf. Chase Manhattan Bank (N.A.) v. Third Eighty-Ninth Assocs. (In re Third Eighty-Ninth Assocs.)*, 138 B.R. 144, 147 (S.D.N.Y. 1992) (finding claims against non-debtors "are really claims against the debtor and therefore impair the automatic stay").

## II. THE AUTOMATIC STAY APPLIES OR EXTENDS TO PROHIBIT PROSECUTION OF THE INDEMNIFICATION CLAIMS AGAINST THE PROTECTED PARTIES

41.     The injunction contained in section 362 of the Bankruptcy Code constitutes a fundamental debtor protection that provides debtors with a "breathing spell" that is essential to a successful chapter 11 process. *Halo Wireless, Inc. v. Alenco Communs., Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 586 (5th Cir. 2012) (citations omitted); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir. 1987); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (noting automatic stay "has been described as one of the fundamental debtor protections provided by the bankruptcy laws") (citations omitted). "The purposes of the bankruptcy stay under 11 U.S.C. § 362 are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (citation omitted).

### A. The Covered Actions Are Automatically Stayed

42.     Consistent with the scope, purpose, and text of section 362, the continuation or commencement of Covered Actions against the Protected Parties must be automatically stayed, and parties should be enjoined from pursuing Indemnification Claims on a go-forward basis during the pendency of the Chapter 11 Cases. As explained above, the Debtors have assumed the defense of the Protected Parties as to the Indemnification Claims, and are thus exclusively responsible for the costs and expending of resources attendant to litigation and resolution of the Indemnification Claims against the Protected Parties. (Renzi Declaration at ¶ 21.) Moreover, in those actions filed

against both a Protected Party and one of the Debtors, the asserted claims against the Protected Parties generally involve the same transactions, same consumer customers, same alleged injuries and same evidence as asserted claims against the Debtors. *Id.*

43.     For these reasons, the commencement or continuation of the Covered Actions invariably will result in the ultimate liquidation of claims against the Debtors outside of the Chapter 11 Cases, while at the same time draining the Debtors' estates of valuable resources, and such actions must therefore be enjoined pursuant to the express text of section 362(a)(1) because each constitutes an "action or proceeding against the debtor" to recover a prepetition claim. *See FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131-32 (2d Cir. 1992) (actions "to recover a claim against the debtor" as provided in section 362(a)(1) "must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage").

### B.   Unusual Circumstances Exist to Extend the Stay to Non-Debtors

44.     But even where the automatic stay does not apply of its own force, this Court can, and here should, extend the stay to non-debtor defendants in "unusual circumstances," including "when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor" or "when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 761 (5th Cir. 1995); *see also S.I. Acquisition*, 817 F.2d at 1147 ("Several courts . . . have reasoned that a nonbankruptcy codefendant may be protected by the automatic stay of section 362(a)(1) if extension of the stay contributes to the debtor's efforts of rehabilitation or the debtor and nonbankrupt are closely related.").

>        *i. An Identity of Interests Exists Between the Debtors and the Protected Parties*

45.     An identity of interests arises "where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs.*, 349 F.3d at 825 (acknowledging that Fifth Circuit has recognized "unusual circumstances" exception to extend bankruptcy stay); *Arnold*, 278 F.3d at 436 (finding automatic stay will be extended to cover non-debtor third parties "where such identity between the debtor and the third-party defendant exists that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor").

46.     The Debtors' indemnification obligations to the Protected Parties give rise to an identity of interests with Debtors and the Protected Parties because the Debtors have assumed the defense of such matters, and ultimately are responsible for the Indemnification Claims and for payment of the covered losses triggered in connection therewith.  (Renzi Declaration at ¶ 21.) Indeed, as the Fourth Circuit held in *A.H. Robins*, an identity of interests exists in circumstances where, as here, "a suit [is filed] against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).  Notably, the reference to "absolute indemnity" does not create a requirement that any indemnity obligation be automatic.  Rather, even just the prospect or potential for indemnification is sufficient to warrant application of the automatic stay.  The *A.H. Robins* court stated further that, "[t]o refuse application of the statutory stay" in such circumstances "would defeat the very purpose and intent of the statute" more broadly.  *Id.*

47.     Following *A.H. Robins*, courts both in and outside the Fifth Circuit have found that a debtor's indemnification obligations warrant the extension of the automatic stay to the indemnified non-debtors under circumstances similar to those here presented.  *See, e.g.*, *Nat'l Oilwell Varco, L.P. v. Mud King Prods.*, No. 4:12-3120, 2013 WL 1948766, at *5 (S.D. Tex. May 9, 2013) (temporarily extending automatic stay to debtors' employees because there could be "potential corporate indemnity obligations to one or more of the [debtors' employees] by virtue of a formal indemnity relationship"); *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, No. 01-01139, 2004 WL 954772, at *3 (Bankr. D. Del. Apr. 29, 2004) (extending stay to non-debtor entitled to indemnification by debtor and explaining that judgment against non-debtor would be, in effect, a judgment against debtor); *Lomas Fin. Corp. v. The N. Tr. Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (affirming bankruptcy court's decision staying action against non-debtor entitled to indemnity by debtor).[11]

48.     For many of the same reasons set forth in these decisions, the stay should be extended to the Protected Parties on account of the Debtors' indemnification obligations here.  The Debtors and the Protected Parties share such identity of interest that the continued prosecution of Indemnification Claims as to the Protected Parties would be a *de facto* proceeding against the Debtors, in frustration of the purposes behind the automatic stay.  And, because the Debtors have assumed the defense of the Protected Parties pursuant to their contractual indemnity obligations, (Renzi Declaration at ¶¶ 20, 21), the continued pursuit of Indemnification Claims against any Protected Party would unfairly divert the Debtors' time and resources to the detriment of its

---

[11]     *See also Arnold*, 278 F.3d at 436 (indicating that "a formal tie or contractual indemnification" can create requisite identity of interests); *Am. Honda Fin. Corp. v. Salyer*, No. 3:03-cv- 651, 2007 WL 1158114, at *3 (S.D. Miss. Apr. 18, 2007) ("Fifth Circuit precedent . . . allows a court to extend the automatic stay provision of 11 U.S.C. § 362 by applying the 'identity of interest' exception in cases in which a contractual indemnification agreement exists between a debtor and non-debtor defendant.").

creditor body as a whole.  (*Id.* at ¶¶ 31, 32.)  Under these circumstances, declining to extend the automatic stay to the Protected Parties "would defeat the very purpose and intent of the statute" meant to provide the Debtors with repose from litigation and its associated costs and distractions, and the relief sought herein should thus be granted for these reasons alone.  *See A.H. Robins*, 788 F.2d at 999.

> ii.  *The Interwoven Nature of the Indemnification Claims and Claims Against the Debtors Creates an Identity of Interest between the Debtors and Non-Debtor Indemnified Parties*

49.     The Court also may find support for an extension of the automatic stay to non-debtors due to the "interwoven" nature of claims between debtor and non-debtor parties.  *See Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990, 2017 WL 5889715, at *6 (N.D. Tex. Nov. 29, 2017) (finding, where severance or separate trials are not suitable options due to fact that claims against corporate debtors being inextricably interwoven with claims against non-debtor co-defendants, "staying the claims as to all co-defendants is the most sensible option in this case"); *Fed. Life Ins. Co. (Mut.) v. First Fin. Grp. of Texas, Inc.*, 3 B.R. 375, 377 (S.D. Tex. 1980) (applying stay to debtor and non-debtor co-defendants when allegations against them were "inextricably interwoven" and arose from the same factual and legal basis).

50.     In several of the cases asserting Indemnification Claims, one of the Debtors is a co-defendant along with one or more of the Protected Parties, and the claims against that Debtor and the Protected Partis arise from the same facts—often times relating to conduct of the Installers, which may, under certain circumstances, be attributable to the Debtors and Protected Party Connexus pursuant to applicable law.  (Renzi Declaration at ¶¶ 19, 30.)  The claims against that Debtor and the Protected Party in such cases are inextricably interwoven such that it would be both difficult and prejudicial for the Debtors to stand on the sidelines if the Indemnification Claims are permitted to proceed against the Protected Parties.  (*Id.* at ¶ 30.)  Indeed, given the interconnected

24

nature of the claims asserted against the parties, the Debtors and the Protected Parties have historically cooperated in their defense in such actions, and shared legal counsel. (*Id.* at ¶ 20.) Accordingly, the automatic stay should be extended to enjoin actions against the Protected Parties related to Indemnification Claims in order to protect against these potential harms to the Debtors and the estate.

### iii. The Debtors Face Risks of Res Judicata, Collateral Estoppel and Evidentiary Prejudice

51.     Litigation of the Indemnification Claims outside of the Chapter 11 Cases also gives rise to the potential risk of *res judicata*, collateral estoppel and evidentiary prejudice against the Debtors, and the relief sought through the Motion should be granted for those independent reasons.

52.     *Res judicata* bars re-litigation in a subsequent action by the parties—or any of their privies—of claims and defenses that were brought—or that could have been brought—in the prior action. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (holding *res judicata* arises when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions"). Because the Debtors and Protected Parties may be deemed to be in privity for the purposes of defending the Covered Actions given their contractual relationship,[12] there is substantial risk that plaintiffs may attempt to bar the Debtors from raising defenses to the Indemnification Claims that were not raised by the Protected Parties in ongoing litigation outside of the Chapter 11 Cases, causing an obvious prejudicial impact to the Debtors.

---

[12]     Any number of relationships may give rise to privity for purposes of claim preclusion, including the contractual relationship of indemnitor-indemnitee. *See FTC v. Garvey*, 383 F.3d 891, 898-899 (9th Cir. 2004).

53.     Similarly, collateral estoppel—or issue preclusion—bars the re-litigation of issues where "(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *See Test Masters*, 428 F.3d at 572.  Importantly, nonmutual collateral estoppel may be applied offensively by litigants who were not parties to the prior litigation.  A clear risk therefore exists that claimants who have never before litigated their claims against the Debtors, or against the Protected Parties, could seek to later bar the Debtors' defenses by pointing to a prior judgment on an Indemnification Claim against a Protected Party.

54.     In these circumstances, courts have consistently concluded that the risks of collateral estoppel and *res judicata* warrant a stay of third-party litigation that could undermine the purposes of the automatic stay, and the same result should obtain here.  *See, e.g.*, *Bestwall LLC v. Those Parties Listed on Appendix A (In re Bestwall LLC)*, 606 B.R. 253, 256 (Bankr. W.D.N.C. 2019) (determining that the risks posed by the doctrines of res judicata and collateral estoppel, among other factors, warrant a preliminary injunction of litigation against non-debtor affiliates); *Am. Film Techs. v. Taritero (In re Am. Film Techs.)*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (concluding factual circumstances implicated indemnification obligations and exposed debtor to collateral estoppel prejudice if debtor does not participate in separate lawsuit, justifying invocation of section 105 to issue preliminary injunction order staying prosecution in order to make effective the automatic stay of section 362(a)).

55.     Finally, beyond these formal doctrines of preclusions, litigation of the Indemnification Claims against the Protected Parties could allow parties to use statements, testimony and other evidence elicited or adduced in those proceedings to try to establish the Debtors' liability for Indemnification Claims in subsequent proceedings.  As one court put it, "once

a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding" involving the debtor regardless of whether the debtor "was a party to the record on which the initial testimony was taken." *In re Johns-Manville Corp.*, 40 B.R. 219, 225 (Bankr. S.D.N.Y. 1983), *aff'd* 40 B.R. 219 (S.D.N.Y. 1984), *and appeal allowed*, *decision vacated in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984) (concluding that risk of collateral estoppel would irreparably injure debtor's estate and, thus, issuance of stay of claims against non-debtors was warranted).

56.     For these reasons, unless the litigation of the Indemnification Claims against the Protected Parties is stayed, the Debtors may be compelled to defend their interests in pending litigation against the Protected Parties to prevent such harm to their estates, thereby defeating the "breathing spell" intended by the automatic stay.  These are consequences that the Debtors should not be required to suffer or be compelled to protect against.

> iv.   *The Circumstances Require Stay Protection to Preserve the Debtors' Reorganization Efforts*

57.     In addition to the existence of an identity of interest between the Debtors and the Protected Parties, allowing the Indemnification Claims to continue outside of the Chapter 11 Cases would "have an adverse impact on the debtor's ability to accomplish reorganization." *See Zale*, 62 F.3d at 761.  Stay protection is essential with respect to the Indemnification Claims to avoid liquidation of claims outside the Chapter 11 Cases, the potential preclusive or prejudicial impact of such litigation, and to avoid depleting the Debtors' resources to the detriment of their estates.

58.     Absent a stay of litigation, "uncontrollable" and "uncoordinated proceedings in different courts" will occur, *A.R. Robins*, 788 F.2d at 998, which eventually will lead to the liquidation of Indemnification Claims against the Protected Parties for which the Debtors ultimately are liable.  Whether such claims are the responsibility of the Debtors directly—by virtue

of being named as a defendant—or indirectly through the Debtors' actual or alleged indemnification obligations, continued litigation against the Protected Parties would liquidate the claims against the Debtors outside of the Chapter 11 Cases, frustrating the purpose of the automatic stay.

59.     Permitting claimants to continue seeking to indirectly liquidate claims against the Debtors through actions against third parties with indemnity rights would also inhibit the Debtors' expeditious confirmation of the Plan or consummation of a sale transaction.   The successful outcome of the Chapter 11 Cases depends upon the Debtors' ability to consummate a transaction that will distribute value to all of the Debtors' stakeholders.   The simultaneous effort by the Defendants to fix Indemnification Claims in other forums against Protected Parties or the Debtors themselves would undermine (or defeat) this goal and the ability of the Debtors and their supporting stakeholders to achieve consummation of one or more transactions that treat all similarly situated claimants fairly and equitably in accordance with the Bankruptcy Code.

60.     To that same end, courts routinely find that the potential diversion of estate resources to monitor or participate in external litigation justifies an extension of the automatic stay, as such efforts would further compromise the Debtors' ability to successfully reorganize in bankruptcy.   *See W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17, 31-32 (Bankr. D. Del. 2008) (finding that actions against non-debtor directly impacted estate due to overlap of issues, contractual indemnity and the implication of debtors' insurance, which would all necessitate the debtors' involvement and divert resources to attend to claims rather than reorganization); *Bestwall*, 606 B.R. at 256-57 (finding that litigation of claims against certain non-debtors would "divert key personnel from the important tasks" required to establish post-emergence trust); *TK Holdings Inc. v. Hawai'i (In re TK Holdings Inc.)*, Adv. Case No. 17-50880

(Bankr. D. Del.) [Docket No. 64], Aug. 17, 2017, Hr'g Tr. 19:5-8 (court ruling entering preliminary injunction and finding "[w]hat the debtors seek and need is a breathing spell to focus the attention of all stakeholders on the reorganization process," and "the record developed thus far supports that need"); *Phila. Newspapers*, 407 B.R. at 616 (finding that diversion of resources caused by action against non-debtors would impact debtors' ability to engage in timely and effective reorganization).

61.     If litigation of Indemnification Claims continues outside the Chapter 11 Cases, the Debtors will be forced to continue to defend such matters on behalf of the Protected Parties, which will divert the Debtors' already constrained resources away from their efforts to confirm the Plan and concurrently run a robust marketing process, and instead focus on and assist with efforts to monitor and participate in litigation, given the identity of claims being liquidated.   More importantly still, the pendency of these actions will deprive the estates of their limited resources in that the Debtors would be required to pay the defense costs of Protected Parties, as well as any judgment rendered.   (Renzi Declaration at ¶ 21.)   Because the loss of such resources is likely to jeopardize the Debtors' ability to consummate one or more value-maximizing restructuring transactions that will provide for fair and equitable distribution of estate assets to creditors pursuant to the Bankruptcy Code, the Covered Actions should be stayed and enjoined from proceeding.

## III.  THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER SECTION 105(A) OF THE BANKRUPTCY CODE TO ENJOIN THE CONTINUATION OR COMMENCEMENT OF INDEMNIFICATION CLAIMS AGAINST PROTECTED PARTIES

62.     The circumstances of the Chapter 11 Cases demand that the automatic stay be extended under section 105(a) to apply to the Protected Parties.   Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  This includes the automatic stay.

63.     Bankruptcy courts' authority to use section 105 to enforce the protections of and achieve the statutory objective behind the automatic stay in section 362 is broadly recognized. *See, e.g.*, *S.I. Acquisition*, 817 F.2d at 1146 n.3 (noting "beyond the automatic stay provisions of section 362(a)(1) and (3), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105" as "[s]ection 105 does empower the bankruptcy court to stay proceedings against nonbankrupt entities").  An injunction as to third-party litigation is appropriate where, among other things, the "failure to enjoin would [a]ffect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through the third party."   *A.R. Robins*, 788 F.2d at 1003 (citations omitted).   Under appropriate circumstances, an injunction allows the debtor to receive the intended benefits of the automatic stay imposed by section 362 of the Bankruptcy Code.

64.     Acting under the broad authority granted by section 105(a), courts have consistently stayed claims against non-debtor entities to maintain the integrity of the debtor's estate and fully effectuate the protections of the automatic stay pursuant to section 362(a).  *See, e.g.*, *Am. Film Techs.*, 175 B.R. at 855 (staying claims against a debtor's directors); *In re Family Health Servs., Inc.*, 105 B.R. 937, 942-43 (Bankr. C.D. Cal. 1989) (staying claims by certain health care providers against members and enrollees of a debtor HMO).

A.   The Preliminary Injunction Factors All Support Enjoining the Pursuit of Debtor Indemnification Claims Against the Protected Parties

65.     To be entitled to a preliminary injunction, a movant must demonstrate the following: (i) a substantial likelihood that the movant will prevail on the merits; (ii) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (iii) that the

threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (iv) that the granting of the injunction will not disserve the public interest. *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 198 (5th Cir. 2024). Each factor favors an injunction here; not only are the Debtors' prospects for a successful reorganization strong, but the requested injunction is necessary to achieve confirmation of the Plan in the Chapter 11 Cases or consummation of an alternative transaction and the Debtors would be irreparably harmed without the injunction.

66.     The first factor—likelihood of success—is satisfied because the Debtors' prospects for a successful reorganization are strong. Following months of good faith negotiations with stakeholders, the Debtors commenced the Chapter 11 Cases with the DIP Facility and a term sheet outlining the terms of the Plan supported by the Debtors' prepetition lenders. Since that time, the Bid Procedures Order has resulted in the Debtors currently running a comprehensive marketing process for their assets on a timeline that will ensure the Debtors are able to exit chapter 11, either via the Plan or an alternative transaction, in an expeditious manner before the end of the year. Moreover, the DIP Facility, and related budget, provide the Debtors with the necessary liquidity to achieve these goals. Thus, the Debtors are likely to successfully reorganize through the consummation of one or more value-maximizing transactions through a plan of reorganization or sale pursuant to section 363 of the Bankruptcy Code. Accordingly, the Debtors' prospects for successfully reorganizing strongly weigh in favor of the requested injunction.

67.     The second factor—irreparable harm—is met because the continued litigation of Indemnification Claims in civil lawsuits or arbitrations would effectively thwart the Chapter 11 Cases. As many courts have recognized in analogous cases, continued prosecution of the Covered Actions would deplete estate assets, distract the Debtors' professionals, and redirect time and

resources away from the Debtors' efforts in their Chapter 11 Cases, thereby threatening the Debtors' ability to swiftly and efficiently resolve the Chapter 11 Cases. *See e.g.*, *E. Air Lines v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) (enjoining non-debtors from continuing lawsuit "[b]ecause the suit would ultimately divert the debtor's resources and attention from the bankruptcy process").

68.     The third factor—the balance of harms—weighs heavily in favor of a preliminary injunction because, in contrast to the risk of the Debtors' ability to confirm the Plan or consummate a sale pursuant to the Bid Procedures, any prejudice caused to the Defendants by an injunction would be minimal, to the extent it would exist at all.  The issuance of an injunction would toll Indemnification Claims for all claimants to the extent not already tolled, and the Debtors anticipate exiting bankruptcy before the end of the year.  Moreover, it is continued litigation of the Indemnification Claims, rather than an injunction, that is likely to harm claimants, as continued prosecution of claims against the Protected Parties would jeopardize the Debtors' ability to resolve consumer claims in connection with a comprehensive restructuring transaction in the Chapter 11 Cases.

69.     The fourth factor—public interest—also supports granting the requested injunction. Not only will the requested injunction help foster a successful chapter 11 reorganization here, which is always in the public interest, it will do so by fostering an equitable resolution of the Indemnification Claims and promoting justice in the court system through the equitable treatment of all holders of current and future Indemnification Claims.

70.     Accordingly, an injunction barring the Defendants from commencing or continuing any Covered Actions against one or more Protected Parties while the Chapter 11 Cases remain pending is appropriate and essential to the orderly and effective administration of the Debtors'

estates.  Good cause exists for the entry of injunctive relief pursuant to sections 105(a) and 362(a) of the Bankruptcy Code.

## **CONCLUSION**

71.      For the reasons discussed above, the Debtors request that the Court enter the Stay Order (i) declaring that the filing or continued prosecution of the Indemnification Claims against any of the Protected Parties while the Chapter 11 Cases remain pending violates the automatic stay, and (ii) preliminarily enjoining the filing or continued prosecution of Indemnification Claims (on any theory of liability) against any of the Protected Parties while the Debtors' Chapter 11 Cases remain pending.

## **NOTICE**

72.      The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition Agent (as defined in the DIP Order);[13] (d) the DIP Agent (as defined in the DIP Order); (e) the state attorneys general for states in which the Debtors conduct business; (f) the Defendants in this adversary proceeding, as identified on Appendix A to the Complaint, or their counsel, if known; (g) the Official Committee of Unsecured Creditors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

*[Remainder of page intentionally left blank.]*

---

[13]      "DIP Order" means that certain *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Ch. 11 Docket No. 211].

Dated: July 22, 2025
Houston, Texas

Respectfully submitted,

*/s/ Charles Persons*
**PAUL HASTINGS LLP**
Charles Persons (TX Bar No. 24060413)
Schlea Thomas (TX Bar No. 24131710)
609 Main Street, Suite 2500
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: charlespersons@paulhastings.com
        schleathomas@paulhastings.com

-and-

Matthew M. Murphy (admitted *pro hac vice*)
Geoffrey M. King (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmurphy@paulhastings.com
        geoffking@paulhastings.com

-and-

Ryan P. Montefusco (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: ryanmontefusco@paulhastings.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

## **CERTIFICATE OF SERVICE**

I certify that on July 22, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Charles Persons
Charles Persons